**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| LISA MILLER, )<br>)<br>    Plaintiff, )<br>)<br>   vs. )<br>)<br>WHIRLPOOL CORPORATION, )<br>LOCAL 808 IUE-AFL-CIO UNION, )<br>)<br>    Defendants. ) | No. 3:03-cv-0199-RLY-WGH |

### Entry Discussing Motions for Summary Judgment

As used in this Entry "Miller" refers to the plaintiff, Lisa Miller, "Whirlpool" refers to Miller's employer, Whirlpool Corporation, and the "Local" or the "Union" refers to International Union of Electrical, Radio, and Machine Workers, A.F.L.-C.I.O. and its affiliate, Local 808.

Under federal labor law, an employee may bring a complaint against her union and/or her employer alleging (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer. *See DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 163-64 (1983); *Vaca v. Sipes,* 386 U.S. 171, 184-86 (1967). The plaintiff may sue the union or the employer, or both. Miller has sued both. Each defendant now seeks resolution of Miller's claims through the entry of summary judgment.

For the reasons explained in this Entry, both Whirlpools' and the Union's motions for summary judgment must be **granted.**

### I. Summary Judgment Standard

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the Federal Rules of Civil Procedure). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

"'It is well-settled that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)). Miller has not met this burden here. Thus, the well-supported facts relied on by Whirlpool in support of its motion for summary judgment are accepted as true for the purpose of the court's resolution of that motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This is the result of Local Rule 56.1(h), of which Miller was notified. She ultimately responded to the motions for summary judgment, but did not do so with evidentiary materials meeting the standard of Rule 56(e). See *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1255 n.13 (7th Cir. 1990) (explaining that statements that are "neither notarized nor made under penalty of perjury [do] not comply with Rule 56(e) . . . As such, we can simply ignore them."); *Martz v. Union Labor Life Ins. Co.,* 757 F.2d 135, 138 (7th Cir. 1985) ("When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence."). The consequence of this failure is clear: "[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission and deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law." *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003) (citing cases). There is no reason to stray from the traditional remedy in this case. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala,* 124 F.3d 298, 305-06 (1st Cir. 1997)(quoting *Fed.R. Civ.P.* 56(e) advisory committee's note to 1963 amendment).

## II. Background

Miller was hired by Whirlpool on July 1, 1991, at its Evansville, Indiana Division. Miller is a member of the Union. As a member of Local 808, Miller abides by the Collective-Bargaining Agreement ("CBA") between Whirlpool and Local 808.

The CBA contains provisions regarding grievance procedures. Those procedures must be followed in order for the parties to proceed to binding arbitration.

Whirlpool maintains an attendance policy with which employees must comply. Pursuant to this attendance policy, an employee accumulates attendance points each year, and if an employee receives over ten absence points during the year, her employment is terminated.

On March 15, 2002, Whirlpool terminated Miller for violation of its attendance policy. This termination was based on Miller having received 11 attendance points. On March 22, 2002, the Union filed grievance number 3155 on behalf of Miller.

On July 19, 2002, an arbitration hearing was held in front of Arbitrator Ann C. Wendt. Evidence was introduced. On August 21, 2002, the Union filed a motion with Arbitrator Wendt to revise the remedy requested in the grievance. On December 17, 2002, Arbitrator Wendt issued her decision.

Arbitrator Wendt awarded Miller relief in the form of an order directing Whirlpool to change Miller's discharge effective March 15, 2002, to a disciplinary layoff without pay commencing March 15, 2002, and continuing until an expedient timely reinstatement following receipt of the Arbitrator's decision. Whirlpool received Arbitrator Wendt's decision on the afternoon of December 20, 2002. That same afternoon, Whirlpool closed the Evansville Division for its holiday shutdown. Because Whirlpool would have had to contact Miller, process her paperwork and return her to work all on December 20, 2002, Whirlpool was unable to return her to work that day.

Upon return from the holiday shutdown on January 2, 2003, Joe West ("West"), Supervisor of Employee Relations, contacted Miller to return her to work. More specifically, when West returned to work on January 2, 2003, he complied with Arbitrator's Wendt's decision by processing Miller's return to work paperwork, changed her discharge status to disciplinary layoff without pay and scheduled her to come into work the next day. Through these steps, Miller's employment at Whirlpool was reinstated.

On January 3, 2003, Miller returned to work. On January 3, 2003, West met with Miller to reacquaint her with Whirlpool's policies and procedures. In the meeting, West provided Miller with copies of Whirlpool's shop rules, new attendance policy, leave of absence policy and safety rules. West also provided Miller with a new work badge. At no time during this meeting did Miller complain that she should have been returned to work on December 20, 2002.

Miller asked the Union to file a grievance when she discovered that Whirlpool did not intend to give her Holiday pay for the 2002 shutdown or make the 2002 contribution to a benefits account. The Union filed the grievance on January 15, 2003 ("return-to-work grievance"), and it was denied by Whirlpool. The Union refused Miller's request that this grievance be pursued to arbitration.

Miller claims that in July 2003, Whirlpool employee West confined her in Holly Joseforsky's ("Joseforsky") office in Whirlpool's benefits department. While in the benefits department, Miller entered Joseforsky's office to obtain Accident & Sickness paperwork. Joseforsky explained to Miller that based upon her doctor's statement she did not qualify for that benefit. However, because Miller had requested Accident & Sickness paperwork, Joseforsky requested a copy of Miller's doctor's statement for her file. Miller refused to provide her a copy of the statement. Because of this refusal, Joseforsky requested that West be present for the meeting. Chief Union Steward Butch Edge ("Edge") was present at Miller's request. Upon entering Joseforsky's office, which is 12 feet by 14 feet and contains a large desk, a work table, and two file cabinets, West was unable to sit down because Edge sat in one available chair and Miller stood leaning over Joseforsky's desk in front of the only other available chair. Miller claims that she told West "to step away from the door" but he did not respond.

Whirlpool discharged Miller again in August 2003. Miller had gone to Whirlpool's payroll office on August 22, 2003, to complain about a mistake in her previous week's paycheck. She brought along Union stewards Ronnie Watson and Rick Beard. Insisting her paycheck was $15 short, she demanded immediate payment, in cash. When Whirlpool's payroll clerks and their boss were unable or unwilling to immediately comply with her

3

demand, she became agitated and irate. The following day, Whirlpool fired her for being belligerent and abusive toward the Whirlpool payroll personnel. The Union again represented Miller and persuaded Whirlpool to take her back and pay her full back pay for the five days she was off work.

### III.  Discussion

Miller's claims against Whirlpool are that: (1) Whirlpool violated the CBA and the arbitration award by not reinstating her or not doing so sooner; (2) she was the victim of wrongful discharge by Whirlpool; (3) she was the victim of retaliatory discharge by Whirlpool; (4) she was the victim of harassment by Whirlpool; and (5) she was the victim of confinement by Whirlpool. Her claims against the Union are that the Union breached its duty of fair representation by not pursuing to arbitration her return-to-work grievance, and other action and inaction.

### Reinstatement/Fair Representation

Section 301 of the Labor Management Relations Act, 1947 (the "LMRA"), 29 U.S.C. § 185, governs the employer's duty to honor the collective bargaining agreement, and the duty of fair representation by a union is implied under the scheme of the National Labor Relations Act (the "NLRA"). *See DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 164 (1983).

Whirlpool was obligated to adhere to the Arbitrator's decision. It did so. In doing so, it did not violate the CBA. Miller returned to work on January 3, 2003, after the paperwork for this action was done on January 2, 2003. That date, January 2, 2003, was the first working day the Evansville plant was open following the holiday closing, and the day before it closed for the holidays, December 20, 2002, was the day the Arbitrator's decision was received. Thus, the paperwork for Miller's reinstatement was done on the first working day after the Arbitrator's decision had been received.

The Arbitrator's decision directed Miller's "expedient timely reinstatement following [Whirlpool's] receipt of the" decision.  As the foregoing recitation shows, Whirlpool complied with this direction.  Thus, there was no violation of the CBA by Whirlpool in this respect.

As to Miller's claim against the Union, a Union breaches its duty of fair representation if its actions are either arbitrary, discriminatory or in bad faith. *Air Line Pilots v. O'Neill,* 499 U.S. 65, 67 (1991). Although these are distinct criteria, in this situation Miller's claim is defeated by the timely action of Whirlpool in reinstating her. Under these circumstances, the Union did not act unreasonably, much less arbitrarily, or in bad faith, in refusing to pursue Miller's return-to-work grievance. *Ooley v. Schwitzer Div., Household Mfg., Inc.*, 961 F.2d 1293, 1304 (7th Cir. 1992)(an employee cannot prevail on a fair representation claim based on the union's failure to process a grievance if the employee's underlying contract claim lacks merit). "In a 'hybrid 301' suit, the employee's claim against the union and his claim against the employer are interlocked: neither claim is viable if the other fails." *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997).

4

Any other claim against the Union Miller asserts is barred by her failure to file suit within the six month statute of limitations imposed upon claims for breach of the duty of fair representation by *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 163-165 (1983); *Chapple v. National Starch and Chemical Co. and Oil*, 178 F3d. 501, 505 (7th Cir. 1999). "[A] Section 301 'cause of action accrues from the time a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance.'" *Id.*(quoting *Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986)).

Additionally, Miller's claim for punitive damages against the Union cannot be maintained, because such damages are not available in an action for an alleged breach by a union of its duty of fair representation. *Foust v. Electrical Workers,* 442 U.S. 42, 52 (1979); *Lewis v. Local Union No. 100 of the Laborers' International Union of North America, AFL-CIO,* 750 F.2d 1368, 1382 (7th Cir. 1984).

### Wrongful Discharge and Retaliatory Discharge

Miller claims that her March 15, 2002, termination constituted wrongful discharge because Whirlpool incorrectly counted an absence as her eleventh absence under its attendance policy. She contends that she had a doctor's statement to cover her eleventh absence point and that Whirlpool should have taken her doctor's statement as an adequate explanation for her absence. However, the doctor's note to which this claim refers is not dated until April 3, 2002. This was more than two (2) weeks after Whirlpool terminated Miller for violation of its attendance policy. Miller claims that her August 22, 2003, discharge was retaliatory because West "had it out for [her] and was planning on--on trying to fire [her] any way, any how, any cost that he could." The concepts of wrongful discharge and retaliatory discharge are used interchangeably by the Indiana courts. *See Wior v. Anchor Industries, Inc.,* 669 N.E.2d 172 (1996).

Whirpool argues that these claims are pre-empted by the federal claim Miller has brought for breach of the CBA itself. Section 301 "creates a federal remedy for the breach of a [CBA]. The remedy is exclusive; no action to enforce such an agreement may be based on state law." *National Metalcrafters v. McNeil*, 784 F.2d 817, 823 (7th Cir. 1986). The scope of this pre-emption as explained in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 410 n.10 (1988), concluded that it was. That language is that "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" A claim is pre-empted if resolution of a claim requires interpretation of a CBA and not simply reference to it. *In re Bentz Metal Products Company, Inc.*, 253 F.3d 283, 289 (7th Cir. 2001)(en banc).

Each of the incidents sparking the seeming termination of Miller's employment by Whirlpool was resolved through Union representation and reference to the processes and provisions of the CBA. Miller's state law claims relating to her discharge, though factually refuted in any event by the circumstances which have been recounted, are each pre-empted by Section 301 of the LMRA.

5

### Harassment

Miller also claims she was harassed. This claim is premised on Miller's claim of confinement, as well as on other directions Miller received from West and Joseforsky regarding her presentation of a doctor's note and her accessing the payroll office. The claim of confinement is considered separately in this Entry, and the remaining factors on which this claim is based are not actionable under any discernible federal or state law.

### Confinement

Miller's confinement claim rests on her view that her presence at and after a certain point in Joseforsky's office in July 2003 amounted to false imprisonment under Indiana law. This claim fails because Whirlpool has shown that (1) the concept of "detention" is a mischaracterization of the circumstances of this incident, and (2) the circumstances of the incident negate the necessary element of "intent" to support a claim of false imprisonment. *See Adams v. Wal Mart Stores, Inc.,* 324 F.3d 935, 940-41 (7th Cir. 2003).

## IV.  Conclusion

"After one party has filed a motion for summary judgment, 'the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues [on] which the nonmovant bears the burden of proof at trial.'" *Pharma Bio, Inc. v. TNT Holland Motor Express, Inc.,* 102 F.3d 914, 916 (7th Cir. 1996) (quoting *Walker v. Shansky,* 28 F.3d 666, 670-71 (7th Cir. 1994)).  The non-movant fails to demonstrate a genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  In this case, Miller has failed to come forward with evidence creating a disputed question of material fact as to whether Whirlpool violated the CBA or engaged in any other conduct which is actionable and whether the Union violated its duty of fair representation.  Whirlpool is entitled to judgment as a matter of law. Accordingly, the defendants' motions for summary judgment are **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  9/8/06

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana